NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                              :
ANGELO RICCARDO CAPALBO,       :
                              :  Civil Action No. 13-7690 (RMB)
          Plaintiff,           :
                              :
     v.                        :
                              :  **MEMORANDUM OPINION AND ORDER**
PRISON/MEDICAL STAFF           :
OF FCI FORT DIX,               :
                              :
          Defendants.          :
_____:

**BUMB, District Judge:**

   Since the procedural history of this matter was already extensively detailed in this Court's prior opinion, Docket Entry No. 2, a brief recap shall suffice.

   Plaintiff, a federal prisoner, initially commenced a § 2241 habeas action (and submitted the $5 fee applicable to such matter) but asserted that he was prescribed a certain surgical procedure that was denied to him for non-medical reasons, and that denial exposed him to the risk of imminent death. See id. at 2. Because Plaintiff's claims were of a civil rights nature and cognizable only in a Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), action, this Court directed the filing of the instant matter. See id. at 2, 15. In the interim, accepting Plaintiff's assertion that he was facing imminent death this Court directed the Office of the United States Attorneys

("OUSA") to file the record of Plaintiff's medical treatments. See id. at 2-3. The OUSA duly complied, and the record it produced showed that Plaintiff has been receiving extensive and systemic medical care, that no prescribed medical treatment was denied to him for non-medical reasons, and he was in no imminent danger of any kind. See id. at 3.

Correspondingly, this Court directed Plaintiff to: (a) either prepay his $400 filing fee or duly obtain in forma pauperis ("IFP") status in connection with this Bivens matter; and (b) file his amended pleading stating the facts in support of his seemingly unsubstantiated claim that he was denied prescribed medical treatment for non-medical reasons. See id. at 4. In response, Plaintiff submitted: (a) an insufficient IFP application (showing that, during the last six months, he received $3,000 in monetary gifts and $2,138 of that amount remained available to him); and (b) a written statement informing this Court of Plaintiff's self-serving belief that his "claims [had to be] of substance," even though he did not know any "critical facts" in support of those claims. Id. at 5.[1]

In light of Plaintiff's submissions, this Court denied him IFP status without prejudice and directed him to show cause as to why the payment of $400 filing fee would be unduly burdensome to him since Plaintiff, who had his basic needs covered by the

---

[1] Plaintiff also requested appointment of pro bono counsel.

correctional institution of his confinement, had more than five times the filing fee available to him on his prison account. See id. at 5-7 (extensively detailing the governing legal standard).

In addition, this Court explained to Plaintiff that courts were obligated to disregard all conclusory or hypothetical allegations and, thus, Plaintiff could not plead his hopes that he might obtain the needed facts if an appointed counsel conducts discovery. See id. at 7-9 (detailing the pleading requirement). The Court stressed that it was Plaintiff's obligation to plead facts that were: (a) already known to him; *and* (b) plausibly showing that his constitutional rights were violated by the prison officials' acts that amounted to *deliberate indifference* as to Plaintiff's serious medical needs. See id. at 9-10 (explaining to Plaintiff the governing substantive test). In conjunction with that ruling, this Court clarified to Plaintiff that disagreements with – or among – medical professionals as to proper medical care, the acts of medical malpractice or negligence cannot amount to a violation of constitutional magnitude. See id. at 10-11 (providing Plaintiff with relevant examples). Mindful of Plaintiff's pro se litigant status, this Court denied his application for appointment of pro bono counsel as premature but granted him another leave to amend, while reminding him to identify the alleged wrongdoers as defendants

3

and to either prepay his filing fee or establish his qualification for IFP status.  See id. at 12-13.

The submission at bar followed.  See Docket Entry No. 7. Addressing the IFP issue, Plaintiff did not address the funds available to him on his prison account statement. Rather, he asserted that he should qualify for IFP status because he: (a) was "historically" indigent; and (b) allegedly owed $25,000 in restitution and $67,000 in personal or emotional debts ($20,000 to one of his uncles, $20,000 to his aunt and another uncle and $27,000 to his sister who lived in Italy and to whom Plaintiff felt emotionally indebted for her support of him over the last nine years).  See id. at 1. 6.

Plaintiff's position is unpersuasive.  As this Court already explained to Plaintiff, under Adkins v. E. I. DuPont De Nemours & Co., Inc., 335 U.S. 331 (1948), Plaintiff is obligated to establish that – *at the instant juncture* – the $400 filing fee payment would be unduly burdensome to him in light of the minimal necessities of his life in prison (which, seemingly, are covered by his correctional institution).  Correspondingly, his allegation that he was qualified as indigent *in the past* is neither dispositive nor even relevant to this Court's current inquiry.  Analogously, the alleged fact that Plaintiff owes restitution (or has personal or emotional debts to his relatives) is inapposite to this Court's Adkins analysis because those

financial or moral obligations cannot establish that Plaintiff would not be availed to the minimal necessities of current prison life in the event he pays less than one-fifth of his current prison funds as the filing fee in this matter.

Therefore, Plaintiff's application to proceed in this matter IFP will be re-denied. However, out of an abundance of caution, this Court will allow Plaintiff one final opportunity to present the amount available to him on his prison account and on his minimal life necessities in prison and establish to this Court's satisfaction that the payment of $400 filing fee would be unduly burdensome to Plaintiff *at this juncture*.

This Court will also grant Plaintiff leave to re-plead his claims in accordance with the procedural and substantive tests this Court already detailed to Plaintiff in the opinion docketed as Docket Entry No. 2. While this Court reserves its final resolution of Plaintiff's claims until Plaintiff prepays his filing fee or duly obtains IFP status, see Izquierdo v. State, 2013 U.S. App. LEXIS 15533, at *2-3 and n.1 [*10] (3d Cir. July 25, 2013) (a court should not conclusively rule on the merits of a claim if the filing fee issue was not resolved), the Court finds it warranted to point out Plaintiff's pervasive pleading errors.

Here, Plaintiff did not state any facts in support of his claim that his prescribed medical treatment was denied to him for

non-medical reasons. Nor did he identify the Defendants who allegedly denied him that prescribed medical treatment while acting with deliberate indifference to his serious medical needs. Rather, Plaintiff made two other assertions. First, he stated his hope that his medical records produced by the OUSA might contain some information which a medical expert might be able to use to support a claim. See Docket Entry No. 7, at 1 ("[I]t appears [to me that one of the affidavits produced by the OUSA] requires review by an independent medical expert who is clinically active and a [B]oard[-]certified practitioner who serves as a medical consultant and expert witness. [Such] medical doctor's service should include, but not [be] limited to, case merit consulting, peer review, assessment of standards of care and possible malpractice and expert testimony. [Thus,] I need the services of a medical consultant to enable me to prepare an 'amended complaint.' . . . It is [my] belief and opinion that I will be prejudiced . . . unless [a] professional expert and expert services (attorney and [an] independent medical expert) . . . are provided to me") (parenthetical explanation in original).

 Then, seemingly to buttress his application for a medical expert (and Plaintiff's re-application for appointment of pro bono counsel), Plaintiff stated his hope that "[i]t is entirely possible that [I] was wronged of [sic] a constitutional magnitude." Id.

Plaintiff's assertions are unavailing. To start, Plaintiff's speculations built upon assumptions are necessarily deficient. See Salyer Land Co. v. Tulare Lake Basin Water Storage Dist., 410 U.S. 719, 731 (1973) ("[A]djudication cannot rest on [a] 'house that Jack built' foundation").

Moreover, even if Plaintiff establishes a *possibility* that he suffered a wrong of constitutional magnitude, such "possibility" still cannot qualify as a viable claim. "[A] complaint must contain sufficient factual matter, [which,] accepted as true, [does] 'state a claim to relief that is *plausible* on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), emphasis supplied). "The plausibility standard . . . asks for *more than a sheer possibility* that a defendant has acted unlawfully." Id. at 662 (emphasis supplied). This standard was specifically adopted to eliminate those claims that do not present "enough" factual matter and assert a mere "possibility." See Twombly, 550 U.S. at 556. Simply put, where a plaintiff fails to nudge his "claims across the line from conceivable [i.e., merely possible,] to plausible, [his] complaint must be dismissed." Id. at 570.

Next, as this Court already explained to Plaintiff when it denied Plaintiff's application for appointment of pro bono counsel, Plaintiff cannot qualify for appointment of counsel

7

until and unless he: (a) establishes his indigence; *and, in addition,* (b) states a viable claim within the meaning of the pleading requirement and the governing substantive test. See Docket Entry No. 2, at 14-15.

Moreover, and paramount here, no expert can "create" a claim for Plaintiff to plead. The role of an expert in the litigation process is not akin to that of a "gumshoe" or a "hired gun": an expert's role is of a scientist who explains scientific concepts in the terms allowing lay-persons to understand those concepts.

Thus, an expert is merely allowed to offer his/her opinion about the application of scientific concepts to the facts *already pled*: in order to make the fact-finder, e.g., the jurors, to appreciate the scientific importance of those facts. Put another way, an expert may only opine about the facts supporting a claim that have *already survived* the court's sua sponte review.

> Federal Rule of Evidence 702, amended to codify the Supreme Court's decisions in Daubert v. Merrell Dow Pharms., 509 U.S. 579 (1993), GE v. Joiner, 522 U.S. 136 (1997), and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), is unambiguous in the sense that it provides that an expert should base the expert's opinion on the *litigant-provided facts* rather than providing the expert's opinion as a "fact" supporting litigant's claim. See Fed. R. Evid. 702; accord Daubert, 509 U.S. 579.

Animal Sci. Prods. v. China Nat'l Metals & Minerals Imp. & Exp. Corp., 702 F. Supp. 2d 320, 350 (D.N.J. 2010) (emphasis supplied), remanded on other grounds, 654 F.3d 462 (3d Cir.

2011). Here, thus far, there are no facts pled, and there is no viable claim.

Finally, even if this Court were to hypothesize that an expert could – as Plaintiff hopes – find "something" in the record in support of Plaintiff's belief that he was treated with a degree of care that cannot withstand "peer review" or that Plaintiff's medical treatment amounted to malpractice, such a "find" would not aid Plaintiff for the purposes of this Bivens matter. As this Court already explained to Plaintiff, claims of insufficient or deficient medical care or other forms of medical malpractice are *not cognizable* in constitutional review, see Estelle v. Gamble, 429 U.S. 97, 107 (1976); rather, Plaintiff is obligated to plead facts showing that he was subjected to *deliberate indifference* to his serious medical needs.

In sum, it is Plaintiff's obligation to: (a) state the facts *that he knows now* in support of his claim that a prescribed medical treatment was denied to him for non-medical reasons; and (b) identify the persons who allegedly denied him that prescribed medical treatment.

IT IS, therefore, on this **5th** day of **December 2014**,

**ORDERED** that Plaintiff's application to proceed in this matter in forma pauperis is denied without prejudice; and it is further

9

**ORDERED** that Plaintiff's allegations are dismissed without prejudice; and it is further

**ORDERED** that Plaintiff's application for appointment of expert and Plaintiff's renewed application for appointment of <u>pro bono</u> counsel are denied as premature; and it is further

**ORDERED** that the Clerk shall administratively terminate this matter by making a new and separate entry on the docket reading, "CIVIL CASE TERMINATED"; and it is further

**ORDERED** that this Court retains its jurisdiction over this matter for the period of ninety days, subject to extension is warranted; and it is further

**ORDERED** that Plaintiff may have this matter reopened if, and only if, he submits: (a) a written statement showing cause as to why he should qualify for <u>in forma pauperis</u> status at the instant juncture in light of the governing test explained to Plaintiff; and (b) his amended complaint stating the facts already known to Plaintiff upon which he asserted that he was denied medical care as a result of deliberate indifference to his serious medical needs.  Such amended complaint shall identify the Defendants and carefully detail each Defendant's personal involvement in the acts amounting to a wrong of constitutional magnitude within the meaning of the governing substantive test explained to Plaintiff in this Memorandum Opinion and Order and in this Court's prior opinion; and it is further

**ORDERED** that Plaintiff's filings of submissions other than those allowed under the terms of this Memorandum Opinion and Order might be deemed an abuse of the legal process, and sanctions might be applied to Plaintiff, if warranted; it is finally

**ORDERED** that the Clerk shall serve this Memorandum Opinion and Order upon Plaintiff by regular U.S. mail.

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**
